## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) TRUDY UNDERWOOD,** | ) |
| **Plaintiff,** | ) Case No. 4:21-cv-00436-GKF-JFJ |
| vs. | ) |
| **(1) AUTOVEST, LLC, AND** | ) **JURY TRIAL DEMANDED** |
| **(2) USI SOLUTIONS, INC.,** | ) |
| **Defendants.** | ) |

## COMPLAINT

NOW COMES Plaintiff, Trudy Undewood, and for her Complaint against Defendants, Autovest, LLC ("Autovest") and USI Solutions, Inc. ("USI"), alleges as follows:

## INTRODUCTION

1. Plaintiff states a claim against Autovest and USI for common law invasion of privacy and for violation of the Fair Debt Collection Practices Act, codified 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which was enacted in 1978.

2. Congress stated its findings and purpose of the FDCPA:

(a) **Abusive practices**

> There is *abundant evidence* of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) **Inadequacy of laws**

> Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) **Available non-abusive collection methods**

> Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) **Interstate commerce**

> Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) **Purposes**

> It is the purpose of this title to *eliminate* abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## JURISDICTION AND VENUE

3. Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy. Additionally, this Court possesses supplemental jurisdiction over Plaintiff's invasion of privacy claims over all Defendants through 28 U.S.C. 1367(a).

4. Defendants conduct business in the state of Oklahoma; therefore, personal jurisdiction is established.

5. Venue is proper pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

6. Plaintiff is a natural person who resides in Tulsa, County of Tulsa, Oklahoma.

7. Plaintiff is a consumer as that term is defined by 15 U.S.C. 1692a(3), and according to Defendants, Plaintiff allegedly owes a debt as that term is defined by 15 U.S.C. 1692a(5).

8. Defendants are each a "debt collector" as that term is defined by 15 U.S.C. 1692a(6), and sought to collect a consumer debt from Plaintiff.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant Autovest is a collections business with an office in Southfield, MI.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant USI is a collections business with an office in Bristol, PA.

11. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12. On or about April 4, 2014, Defendant Autovest filed a lawsuit against Plaintiff seeking to collect on a consumer vehicle deficiency debt that Defendant Autovest allegedly purchased for the purposes of collection, styled *Autovest LLC v. Trudy Underwood*, Tulsa County Case No. CJ-2014-141 (the "State Court Lawsuit").

13. On August 28, 2014, Plaintiff, through her counsel, filed an Answer to the State Court Lawsuit, disputing the debt. A copy of the Answer was sent to Defendant Autovest through its attorneys and agents.

14. On September 29, 2014, counsel for Plaintiff sent a fax correspondence confirmed received by Defendant Autovest's attorneys and agent, that Plaintiff disputed the debt.

15. On August 3, 2014, counsel for Plaintiff sent additional fax correspondence confirmed received by Defendant Autovest's attorneys and agent, that Plaintiff disputed the debt.

16. On August 6, 2014, Defendant Autovest *dismissed* the State Court Action against Plaintiff. Autovest sent a copy of the Dismissal to the attorney for Plaintiff.

17. However, five years later, Defendant Autovest began new efforts to collect the alleged debt through its agent, Defendant USI.

18. On or around July 14, 2020, USI began a collection campaign against Plaintiff seeking to collect the same debt.

19. During the first call, USI's agent "John Besugli" told Plaintiff that he was calling regarding a Wells Fargo debt regarding a Dodge Durango. Plaintiff explained to USI's employee that the debt was taken care of years ago and asked him not to contact her at work. In response, USI's employee told Plaintiff that they would indeed be contacting her again, because "you owe a lot of money."

20. Despite Plaintiff telling USI not to contact her while at work, USI called Plaintiff over 30 times while she was at work, including the following dates: October 27, 2020, October 28, 2020, October 29, 2020 (2 messages), November 2, 2020, and December 8, 2020.

21. On September 9, 2020, Plaintiff received an initial letter from USI, dated August 31, 2020, regarding the alleged debt, seeking to collect over $44,000.00. However, the letter from USI failed to identify any current creditor and failed to identify that Defendant Autovest was the current creditor of the debt.

22. Notably, the letter stated that the debt sought was time-barred in bold capital letters:

**THE LAW LIMITS HOW LONG YOU CAN BE SUED ON A DEBT. BECAUSE OF THE AGE OF THE DEBT, OUR CLIENT CANNOT SUE YOU FOR IT. USI SOLUTIONS INC. CANNOT SUE YOU ON THIS DEBT. IN MANY CIRCUMSTANCES, YOU CAN RENEW THE DEBT AND START THE TIME PERIOD FOR THE FILING OF A LAWSUIT AGAINST YOU IF YOU TAKE SPECIFIC ACTIONS SUCH AS MAKING CERTAIN PAYMENT ON THE DEBT OR MAKING A WRITTEN PROMISE TO PAY. YOU SHOULD DETERMINE THE EFFECT OF ANY ACTIONS YOU TAKE WITH RESPECT TO THIS DEBT.**

23. On or about September 9, 2020, Plaintiff spoke with an employee of USI regarding the debt. During the conversation, USI never identified it was collecting on behalf of Autovest, only identifying Wells Fargo as the creditor. During this call, USI claimed to have sent a letter to Plaintiff in November, 2019, a likely false statement as the letters dated August 31, 2020 appears

to be the initial dunning letter from USI and contains the verbiage required by 15 U.S.C. §1692g for an Initial Communication.

24. Despite being asked by Plaintiff not to call her at work, USI called Plaintiff again on or about September 14, 2020, and numerous times thereafter.

25. During this conversation on September 14, 2020, the USI employee told Plaintiff that USI was the current owner of the debt. Later in the conversation, Plaintiff was transferred to a different USI employee, Matthew Bullock, who this time told her that USI was collecting the debt on behalf of Defendant Autovest.

26. Defendant USI, on behalf of Defendant Autovest, also called Plaintiff while she was at work and left voicemail messages for her on October 27, 2020, October 28, 2020, October 29, 2020 (2 messages), November 2, 2020, and December 8, 2020.

27. In almost each one of the voicemail messages left between October 27, 2020 and December 8, 2020, USI's employee "Jim Smith," deceptively created a false sense of urgency regarding this time-barred debt. For example, USI's "Jim Smith" voicemail messages for Ms. Underwood stating that it was "*very important that you touch base with me immediately*," "*I do need to hear from you immediately*," "*It's very important that you touch base with me immediately*," "*Trudy, I do need to hear from you immediately*," "*Very important that you touch base with me*," and some of them snidely ending with, "*Good luck!*"

28. The false sense of urgency was likely crafted with the intent of inducing Plaintiff to make a voluntary payment on the time-barred debt, and thereby re-starting the statute of limitations. In no call to Plaintiff did USI ever disclose that the debt was passed the statute of limitations or that a voluntary payment made by Plaintiff could re-start the statute of limitations.

29. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, frustration, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of her personal privacy and right to be represented by legal counsel.

30. The acts and omissions of Defendant USI, and the other debt collectors employed as agents by Defendant USI who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Autovest.

31. The acts and omissions by Defendant USI and its employee debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Autovest in collecting consumer debts.

32. By committing these acts and omissions against Plaintiff, Defendant USI and its employee debt collectors were motivated to benefit their principal, Defendant Autovest.

33. Defendant Autovest is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, in their attempts to collect this alleged debt from Plaintiff.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT, (FDCPA), 15 U.S.C. § 1692 et seq.

34. Defendants violated the FDCPA. Defendants' violations include, but are not limited to the following:

a) Defendants violated §1692c(a)(2) of the FDCPA by communicating with Plaintiff when Defendants were aware of the name and address of the attorney representing Plaintiff;

b) Defendants violated §1692c(a)(1) by communicating with Plaintiff at a place or a time or place known or which should be known to be inconvenient to the consumer and §1692c(a)(3) of the FDCPA by its calls to Plaintiff after Plaintiff had advised Defendants that she did not want to be contacted while at work; and

c) Defendants violated §1692e by deceptively creating a false sense of urgency regarding a time-barred debt in voicemail messages left for Plaintiff

## COUNT II
## INVASION OF PRIVACY

35. Plaintiff is entitled to recover damages for the Oklahoma common law claim of invasion of privacy. Defendants' actions of contacting Plaintiff directly after they were aware that she was represented by legal counsel constituted the invasion of her privacy as it was an intrusion upon her seclusion.

36. Such inclusion was intentional, was without Plaintiff's consent, and would be considered highly offensive to a reasonable person.

37. Plaintiff is entitled to recover damages in an amount exceeding $10,000.00 for her common law invasion of privacy claim.

WHEREFORE, Plaintiff, Trudy Underwood, respectfully prays that judgment be entered against Defendants, jointly and severally, for the following:

a) Statutory damages of $1,000.00 against each Defendant, pursuant to the FDCPA, 15 U.S.C. 1692k;

b) Actual damages pursuant to the FDCPA, 15 U.S.C. 1692k;

c) Actual and Punitive Damages for Plaintiff's common law invasion of privacy claim;

    d)  Costs and reasonable attorney's fees pursuant to the FDCPA, 15 U.S.C. 1692k; and

    e)  Any other relief that this court deems to be just and proper.

Respectfully submitted,

/s/ Victor R. Wandres
Victor R. Wandres, OBA #19591

PARAMOUNT LAW
CONSUMER PROTECTION FIRM

1202 E. 33rd Street
Tulsa, OK 74105
(918) 200-9272 voice
(918) 895-9774 fax
victor@paramount-law.net